# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00019-CV

---

**C. G., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE 424TH DISTRICT COURT OF BURNET COUNTY**
**NO. 50416, THE HONORABLE EVAN C. STUBBS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Following a de novo hearing, the district court terminated the parental rights of C.G. (Mother) to her child J.B. (Son), born April 15, 2019. In a single issue on appeal, Mother asserts that the district court erroneously took judicial notice of the trial of the matter before an associate judge without formally admitting into evidence a recording or transcript of that trial, resulting in insufficient evidence to support the district court's termination findings. We will affirm the order of termination.

## BACKGROUND

The case began in November 2019, when the Texas Department of Family and Protective Services (the Department) received a report alleging that Mother was caring for Son while she had been using methamphetamine; that Mother and Son had been living at various residences that were reported to be used for the distribution, use, and manufacture of

methamphetamine; and that Mother had transported methamphetamine from Burnet to Horseshoe Bay while caring for Son. Following an investigation into the allegations, the Department filed suit for termination of Mother's parental rights and obtained emergency possession of Son.

The case proceeded to trial before an associate judge, which was conducted remotely via videoconference due to the COVID-19 pandemic. No transcript or recording of the trial before the associate judge has been included in the appellate record. However, it is undisputed that at the conclusion of trial, the associate judge found that Mother's parental rights should be terminated.

Mother requested a de novo hearing before the district court, which was also held via videoconference. At the beginning of the hearing, the district court summarized the status of the case:

> And so we're here on a De Novo request by [Mother] from a hearing on termination that was held by Judge Mabray. And that hearing was also held by videoconference and with the agreement of the parties I have review[ed] the entirety of that hearing. And, let me see, in that hearing I believe the caseworker was Theresa McDonald and she testified. And, let's see, looking over my notes. And at this point, based on the agreement of the parties[1] and my review of that hearing, I'm going to take judicial notice of all of the contents of that particular hearing, including all questioning and all answers.

Neither of the attorneys for Mother objected to the district court's procedure. The attorney for the Department then asked the district court to also take judicial notice of the "Court's file and everything contained therein," and the district court did so without objection. Following a bench

---

[1] This agreement is evident in emails that were exchanged between the parties prior to the de novo hearing. Although the emails have not been included in the record, they were attached to the Department's brief.

conference off the record, the district court reiterated that it had "reviewed the entire prior hearing in front of Judge Mabray" and that it was "going to take all of that testimony into account just as if provided verbatim here today." Again, Mother's counsel did not object.

Mother, who was being detained at the time of the hearing in the Burnet County Jail, was the only witness to testify at the hearing. Prior to her testimony, Mother's counsel reminded her that the district court had already reviewed the trial before the associate judge and that "it's just as though he was there that day and he heard everything that was said. . . . So I want to remind you that if we start going back over the things that he's already heard, he may stop us and remind us of that. . . . Is that understood?" Mother answered, "Yes, ma'am. We went over that already, you and I. I remember, yes, ma'am."

During her testimony, Mother claimed that she was being detained in jail "on a charge [she] did not even commit," requested release from jail on a personal bond, and criticized her counsel for what she claimed was ineffective representation. During an extended narrative by Mother in which she complained of "inconsistencies in the paperwork" that counsel had provided to her, the district court interjected and reminded Mother that it had already reviewed the record of the trial before the associate judge:

[The Court]: Okay. [Mother], I'm going to stop you real quick.

[Mother]: Sorry, sir.

[The Court]: No, you're fine. So just hear me out for just a moment. So I listened to the entire hearing that you had in front of Judge Mabray.

[Mother]: Thank you.

3

[The Court]: And in that hearing you basically said that you—you had an excuse for why you didn't take your drug tests and you had an excuse for why, but the simple fact of that testimony was that your claim that you were being held against your will, it just wasn't credible. And so the question then is whether or not you did any of your services that were required for you to work through the process with CPS to retain your rights to your child.

[Mother]: Okay.

[The Court]: And so what is it that you would like me to hear as to why either you did not do your services and shouldn't be held accountable for not doing those, or why you didn't take your drug tests, or why it is that you should retain rights to your child. Because [counsel], from my review, did a very good job of representing your interests. The simple issue was that they had no facts to help them to defend you in retaining your rights to your child because you didn't do anything.

[Mother]: Right.

[The Court]: You didn't do what was asked of you by CPS. You failed drug tests or didn't take drug tests and you didn't do what was required of you by CPS for you to maintain your rights to your children and that had nothing to do with [counsel]. It appeared that they did an excellent job of trying to represent you, but they had no facts that would be helpful to them in defending your rights. So what is it that you want me to hear as to why your rights should not be terminated because that was the decision of Judge Mabray.

[Mother]: Right.

[The Court]: And unless you have something else to offer me to explain something, then the simple fact is your child was removed and you did nothing to try to—for there to be a reason for you to maintain your rights with your child and that doesn't have anything to do with [counsel]. So what is it you want me to hear?

4

Mother then continued her testimony in narrative form, claiming that Son had been taken from her "illegally," repeating that she was being wrongfully detained, and questioning whether "there's justice in anything in Burnet County." She concluded,

> So really what I'm going to do from here on out is I'm going to invoke my Fifth Amendment right and I'm not going to say another word. For the first time in my life I'm actually going to be quiet . . . . So I can't—there's nothing really more I can say or do. Every time I open my mouth I get myself in trouble, so that's just what it's going to come down to. And I'm going to practice [sic] my Fifth Amendment right and that's it.

The district court asked the parties if they had any additional questions for Mother, and they did not. Mother's counsel then briefly explained to the court that Mother suffered from an untreated thyroid condition and that this was "affecting her physically, mentally, and emotionally." The district court next asked the parties if they had any additional witnesses, and they did not. The district court then ruled as follows:

[The Court]: All right. Then at this point, having taken into account all of the testimony and all of the questioning from the prior hearing—I understand the issue about the thyroid. I also understand why [Mother] would rather not be in custody, but it's my understanding she's currently in custody on a possession of a controlled substance charge and a tampering charge and that at least the majority of the testimony at the prior hearing that's being taken into account was dealing with a timeframe prior to her being in custody and that effectively through that testimony she did nothing as far as her—

[Mother]: That's a lie.

[The Court]: —service plan and did—did nothing as far as trying to work through what was being asked of her to retain the rights to [Son]. And so at this point I'm going to adopt all of the findings and the rulings of the associate judge at that prior hearing and deny the De

5

Novo relief that's—

[Mother]:      Bravo.

[The Court]:   —that's being requested and grant the termination.

[Mother]:      Bravo.  Thank you so much.

After that, the district court concluded the proceedings.  In its final order terminating Mother's parental rights, the district court found that termination of Mother's parental rights was in the best interest of Son and that Mother had (1) constructively abandoned Son and (2) failed to comply with the provisions of a court order that specifically established the actions necessary for Mother to obtain the return of Son.  *See* Tex. Fam. Code § 161.001(b)(1)(N), (O), (2).  This appeal followed.

## DISCUSSION

In her sole issue on appeal, Mother asserts that because the district court took judicial notice of the trial before the associate judge without formally admitting a recording or transcript of the trial into evidence, there is insufficient evidence to support the district court's findings as to either the statutory grounds for termination or the best interest of the child.

Judicial notice of adjudicative facts is governed by Texas Rule of Evidence 201. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005) (quoting Tex. R. Evid. 201(b)).  Thus, when evidence concerns "disputed facts and opinions, it should not [be] judicially noticed." *Id.*

6

"A trial court may take judicial notice of its own records in matters that are generally known, easily proven, and not reasonably disputed." *In re J.E.H.*, 384 S.W.3d 864, 870 (Tex. App.—San Antonio 2012, no pet.). For example, a court may take judicial notice that a pleading has been filed in the case, that it has signed an order, and of the terms of a court order, including a family service plan. *See id.* (citing *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508 (Tex. App.—Austin 1994, no writ)); *see also In re C.S.*, 208 S.W.3d 77, 81 (Tex. App.—Fort Worth 2006, pet. denied) ("It is appropriate for a court to take judicial notice of a file in order to show that the documents in the file are a part of the court's files, that they were filed with the court on a certain date, and that they were before the court at the time of the hearing.")). "A court may not, however, take judicial notice of the *truth* of allegations in its records." *Tschirhart*, 876 S.W.2d at 508 (emphasis in original). For example, a court may not take judicial notice of the truth of the factual contents contained within a removal affidavit or of testimony or other evidence that a parent failed to comply with a family service plan. *See J.E.H.*, 384 S.W.3d at 870. "It is inappropriate for a trial judge to take judicial notice of testimony even in a retrial of the same case." *Guyton v. Monteau*, 332 S.W.3d 687, 693 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also Davis v. State*, 293 S.W.3d 794, 797 (Tex. App.—Waco 2009, no pet.) ("Testimony given during a trial is necessarily subject to an assessment as to the truth of the testimony and the honesty or bias of an interested witness."). "In order for testimony from a prior hearing or trial to be considered in a subsequent proceeding, the transcript of that testimony must be properly authenticated and entered into evidence." *Guyton*, 332 S.W.3d at 693 (citing *In re M.C.G.*, 329 S.W.3d 674, 675 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (supp. op. on reh'g)); *see also Davis*, 293 S.W.3d at 797 ("A trial judge may not even judicially notice testimony that was given at a temporary hearing in a family law case at a subsequent hearing in

7

the same cause without admitting the prior testimony into evidence." (citing *May v. May*, 829 S.W.2d 373, 376 (Tex. App.—Corpus Christi-Edinburg 1992, writ denied); *Wilson v. Wilson*, 132 S.W.3d 533, 538 (Tex. App.—Houston [1st Dist.] 2004, pet. denied))).

However, as with other evidence-admissibility issues, any error in taking judicial notice must be preserved in the court below. *See In re N.T.*, 335 S.W.3d 660, 669 (Tex. App.—El Paso 2011, no pet.); *In re K.C.B.*, 280 S.W.3d 888, 893 (Tex. App.—Amarillo 2009, pet. denied); *In re I.V.*, 61 S.W.3d 789, 795 (Tex. App.—Corpus Christi-Edinburg 2001, no pet.); *In re M.W.*, 959 S.W.2d 661, 664 (Tex. App.—Tyler 1997, writ denied); *see also In re C.O.*, No. 04-17-00175-CV, 2018 WL 1733178, at *3 (Tex. App.—San Antonio Apr. 11, 2018, no pet.) (mem. op.) (concluding that because parent "failed to object to the district court's reliance on the reporter's record from the underlying hearing or argue the Department failed to produce any evidence at the de novo hearing," parent "cannot complain for the first time on appeal that the district court's reliance on the reporter's record from the underlying hearing was improper"). Accordingly, a party must object to the trial court's taking of judicial notice or any error in the procedure is waived.[2] *See* Tex. R. App. P. 33.1(a)(1)(A); *N.T.*, 335 S.W.3d at 669; *see also In re B.L.D.*, 113 S.W.3rd 340, 353 (Tex. 2003) ("Appellate review of potentially reversible error never presented to a trial court would undermine the Legislature's dual intent to ensure finality in these cases and expedite their resolution."); *cf. B.L.M. v. J.H.M., III*, No. 03-14-00050-CV, 2014 WL 3562559, at *13 (Tex. App.—Austin July 17, 2014, pet. denied)

---

[2] In fact, there is a specific provision in Rule 201 that grants the parties an opportunity to be heard on the propriety of taking judicial notice. *See* Tex. R. Evid. 201(e) ("On timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard.").

(mem. op.) (concluding that counsel's objection to trial court taking judicial notice of testimony and other evidence in court's file was sufficiently specific to preserve error).

In this case, the district court informed the parties at the beginning of the de novo hearing that it was taking judicial notice of "all of the contents" of the trial before the associate judge, "including all questioning and all answers." Mother failed to object to this procedure at any point during the hearing. Accordingly, any error in the district court's taking of judicial notice has been waived. *See* Tex. R. App. P. 33.1(a)(1)(A); *K.C.B.*, 280 S.W.3d at 893.

Additionally, prior to the de novo hearing, the parties agreed that the district court could consider the video recording of the trial in the same way it could consider a written transcript of that trial. *See* Tex. Fam. Code § 201.105(c) ("In the de novo hearing before the referring court, the parties may present witnesses on the issues specified in the request for hearing. The referring court may also consider the record from the hearing before the associate judge . . . ."). Although the recording of the trial was never formally admitted into evidence, Texas courts have "repeatedly held that evidence that is not objected to and that the trial court and the parties treat as admitted is, for all practical purposes, admitted." *Texas Health Enters., Inc. v. Texas Dep't of Hum. Servs.*, 949 S.W.2d 313, 314 (Tex. 1997) (collecting cases); *see also Sanchez v. Bexar Cnty. Sheriff's Dep't*, 134 S.W.3d 202, 203–04 (Tex. 2004) (concluding that record of administrative hearing was "constructively admitted" into evidence when "both parties and the district court relied on the record as admitted throughout the proceedings"); *In re J.R.*, No. 07-18-00240-CV, 2018 WL 7488914, at *2–3 (Tex. App.—Amarillo Sept. 26, 2018, pet. denied) (mem. op.) (after trial court informed parties that it had considered "full transcript (with exhibits) of the final hearing before the Associate Judge" in reaching its decision on termination, "no one objected to the court's consideration of that evidence before the final judgment was

9

entered" or "thereafter via a timely motion for new trial or the like," and thus appellant could not complain on appeal about trial court's consideration of that evidence); *In re A.G.C.*, 279 S.W.3d 441, 450 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (concluding that because parties treated father's affidavit of relinquishment and copy of mediated settlement agreement as evidence at trial, father could not complain on appeal that documents were not admitted into evidence); *Texas Dep't of Pub. Safety v. Latimer*, 939 S.W.2d 240, 242–43 (Tex. App.—Austin 1997, no writ) (concluding that administrative record "was effectively admitted into evidence" when "both parties treated the record as if it had been admitted into evidence" and appellant "did not object to the court's consideration of the administrative record on the basis that it was not in evidence").

That is what occurred here. Mother's counsel did not object at any point to the district court considering the video recording of the trial and agreed with the Department that the district court could do so, and at the de novo hearing, the district court and the parties treated the recording of the trial as if it had been admitted. Accordingly, the recording of the trial was, "for all practical purposes, admitted" into evidence, and Mother cannot complain for the first time on appeal that it was not. *See J.R.*, 2018 WL 7488914, at *2–3; *A.C.G.*, 279 S.W.3d at 450; *Latimer*, 939 S.W.2d at 242–43.

We overrule Mother's sole issue on appeal.

## CONCLUSION

We affirm the district court's order of termination.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   June 9, 2022